**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOSE PONCE,

      Plaintiff,

vs.                                                                                 No. CIV 13-0334 JB/ACT

UNITED STATES OF AMERICA,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant United States of America's Motion to Dismiss, filed July 8, 2013 (Doc. 9)("Motion").  The Court held a hearing on November 19, 2013.  The primary issue is whether the Court should dismiss the case for lack of subject-matter jurisdiction, because Plaintiff Jose Ponce neither asked the United States Postal Service ("USPS") to reconsider its decision to deny his administrative claim nor filed an action in federal court within six months of the USPS' decision denying his administrative claim. Because 28 U.S.C. § 2401(b) bars the Court from hearing the case, the Court will grant the Motion and dismiss the case.

**FACTUAL BACKGROUND**

On February 1, 2012, Ponce, an older man, lost his footing in front of a Post Office in Hatch, New Mexico, because he did not see an "unmarked sudden drop in elevation of the cement area" surrounding the Post Office.  Complaint to Recover for Personal Injuries ¶¶ 5-9, at 1-2, filed April 9, 2013 (Doc. 1)("Complaint").  Ponce fell and suffered serious injuries.  See id. ¶ 9, at 2.  Ponce argues that the elevation drop was unreasonably dangerous, because the United States had not marked it, built hand rails nearby, or properly lit the surrounding area.  See

Complaint ¶¶ 11-15, at 3-4.  Ponce contends that the United States' failure to take those measures constitutes negligence, and that that negligence caused extensive injuries from which he continues to suffer, and for which he has sought and continues to seek medical care.  See Complaint ¶¶ 16-19, at 4.

The parties do not dispute the pre-filing procedural timeline.  Ponce "filed a notice of claim on February 17, 2012 . . . but failed to indicate the amount of damages claimed."  Motion ¶ 3, at 1.  See Plaintiff's Response to Defendant's Motion to Dismiss ¶ 1, at 1, filed July 18, 2013 (Doc. 15)("Response")("Plaintiff filed a notice of claim on February 17, 2012.").  "The United States Postal Service ('USPS') notified Plaintiff that his claim was defective since it did not state the amount of monetary damages he was requesting."  Motion ¶ 4, at 2.  See Response ¶ 3, at 1 ("On February 22, 2012, the Defendant informed Plaintiff that he had not listed an amount of monetary damages in his claim and that the claim was therefore defective.").  Ponce sent a second notice of claim on March 2, 2012, "stating the amount of his claim was $15,000." Motion ¶ 5, at 2.  See Response ¶ 4, at 1 ("On March 2, 2012, Plaintiff submitted a second claim.").  On April 6, 2012, the USPS sent Ponce a letter notifying him that the USPS had denied his administrative claim and stating that, if he wished to pursue his claim in federal court, he must file such a suit "no later than six (6) months from the date of the mailing of this letter." Motion ¶ 7, at 2 (quoting Letter from United States Postal Service to Jose Ponce, executed April 6, 2010, filed July 8, 2013 (Doc. 10)).  See Response ¶ 5, at 1 ("On April 6, 2012, the defendant informed Plaintiff that his claim was denied.").  Ponce did not ask the USPS to reconsider its decision until April 1, 2013, when his "counsel sent a letter demanding payment of $375,000." Motion ¶ 10, at 2.

## PROCEDURAL BACKGROUND

Ponce filed his Complaint on April 9, 2013: characterizing himself as the United States' visitor or business invitee, he has sued the United States, alleging negligence and gross negligence, and asking for compensatory and punitive damages.  See Complaint ¶¶ 11-19 at 3-4; id. at 5.  "The United States was not served with suit until served with the subject action on or about April 17, 2013."  Motion ¶ 8, at 2.  The United States moves the Court to dismiss the action for lack of subject-matter jurisdiction, arguing that it is untimely under 28 U.S.C. § 2401(b), which limits the time within which a plaintiff can sue the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA").  According to the United States,

> [a]ny claim pursuant to the FTCA is barred unless it is presented to the appropriate federal agency within two years of the claim's accrual, and filed within six months after notice of denial of the claim by that agency.  The USPS regulations provide that the claimant may also file a written request with the post office for a reconsideration of the decision within the six month period provided in 28 U.S.C. 2401(b) [sic].
>
> * * * *
>
> Plaintiff presented his claim to the agency in a timely manner, but failed to request the agency to reconsider its decision or file an action in this Court within 6 months of the agency's denial of his claim.  Accordingly, this Court lacks subject matter jurisdiction to hear Plaintiff's claims.

Motion at 3-4.

Ponce disagrees and raises two arguments in response.  Ponce first points to the statute's language:

> **(b)** A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues **or** unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

Response at 1-2 (emphasis in original)(quoting 28 U.S.C. § 2401(b)).  In his view, "[b]y filing

his claim with the appropriate agency only 16 days after his claimed injury, the Plaintiff satisfied the requirement of 28 U.S.C. §2401(b) [sic] despite the fact that he had until February 1, 2014 to file the administrative claim."  Response at 2.  Ponce emphasizes that he filed his Complaint "on April 9, 2013, within both the two year limits for filing administrative claims and within the 6 year statute of limitations under 28 U.S.C. § 2401(a)."  Ponce also argues that the requirement's purpose "is to allow fair notice to the agency to investigate the claim and to allow the government to consider settlement," and contends that he placed the USPS on notice by filing his administrative claim only sixteen days after the accident and his supplemental administrative claim a month after the accident.  Response at 2.

In the United States of America's Reply in Support of its Motion to Dismiss, filed August 2, 2013 (Doc. 13)("Reply"), the United States concedes that "the statute is not artfully drafted," but contends that "appellate courts have consistently held that a party must both file the claim within two years after accrual and then to [sic] file the complaint within six months after the agency denies the claim."  Reply at 2.  The United States cites cases from the United States Courts of Appeals for the Second, Fifth, Sixth, Ninth, Tenth, and District of Columbia Circuits to support that conclusion.  See Reply at 2-3.  In the United States' view, Ponce "fails to cite any authority . . . that he only need to either file a claim in two years OR file a complaint."  Reply at 3 (emphasis in original).

The Court held a hearing on November 19, 2013.  See Transcript of Hearing, taken November 19, 2013 ("Tr.").[1]  Upon the Court's questioning, the United States clarified that, although the Tenth Circuit has not detailed its reasons for interpreting 28 U.S.C. § 2401(b)'s

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

requirements conjunctively -- as its sister circuits have -- the Tenth Circuit has nonetheless been "very explicit that both requirements must be satisfied."   Tr. at 2:11-4:8 (Court, Keegan)(referring to Indus. Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963 (10th Cir. 1994), and Franklin Savings Corp. v. United States (In re: Franklin Savings Corp.), 385 F.3d 1279 (10th Cir. 2004)).   The Court indicated that, as a matter of first impression, it would not "think it was obvious that that 'or' was really going to be interpreted as an 'and[;]'" the United States agreed that the statute is unclear, but argued that the circuits that have looked at the question closely, with careful attention to the legislative history, have held that Congress intended to require plaintiffs to satisfy both of 28 U.S.C. § 2401(b)'s prongs.  Tr. at 5:10-18 (Court, Keegan).  Further, the United States contended that, read literally, the FTCA would have no statute of limitations and argued that, "certainly, that was not what the legislature was attempting to accomplish."  Tr. at 5:19-6:1 (Keegan).

Ponce reiterated his Response's principal arguments that the statute's plain language is disjunctive and that the statute's intent is to give the United States fair notice of claims against it. See Tr. at 8:11-7:7 (Acuna).  Further, Ponce pointed out that he began this suit *pro se* and argued that his actions had satisfied the statute's intent to fairly notify the United States of claims against it.  See Tr. at 7:8-20 (Acuna).  Ponce conceded that he had not studied the Tenth Circuit's cases in detail, but nonetheless argued that those cases lack the language from other circuits' cases "stat[ing] that the statute was not either written clearly enough or that it takes on a different tone than really as written."   Tr. at 7:21-8:6 (Court, Acuna).   The Court asked Ponce how he responded to the following language from Industrial Constructors Corp. v. U.S. Bureau of Reclamation: "A tort claim against the United States is barred unless it is presented to the proper agency within two years of its accrual and suit is commenced within six months of notice of the

claim's denial by the agency." Tr. at 8:7-15 (Court)(quoting 15 F.3d at 967).  Ponce responded

that he had nothing to add, "[o]ther than to say [that he] did satisfy giving notice to the

Government." Tr. at 8:16-32 (Acuna).

The United States replied with two principal arguments.  First, the United States

contested Ponce's characterization of the statute's purpose: in its view, the statute not only

guarantees notice, but also ensures that plaintiffs do not bring "stale claims" against it.   Tr. at

9:11-18 (Keegan).  Second, the United States argued that, even though Ponce confronted a

difficult challenge when he tried to interpret the statute as a *pro se* plaintiff, the time limitation is

a matter of subject-matter jurisdiction, and the Court lacks the power to extend that jurisdiction

out of sympathy for Ponce's plight.  See Tr. at 9:19-10:5 (Keegan).

The Court indicated it was inclined to grant the Motion, because the Tenth Circuit

appears to agree with its sister circuits that plaintiffs must satisfy both prongs of 28 U.S.C.

§ 2401(b).  See Tr. at 10:9-19 (Court).

## LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those

cases authorized and defined in the Constitution which have been entrusted to them under a

jurisdictional grant by Congress."  Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th

Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's

jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83,

104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its

existence.").  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise by

motion the defense of the court's "lack of jurisdiction over the subject matter." Fed. R. Civ. P.

12(b)(1).   The Tenth Circuit has held that motions to dismiss for lack of subject-matter

jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Hill v. Vanderbilt Capital Advisors, LLC, No. 10-0133, 2011 WL 6013025, at *8 (D.N.M. Sept. 30, 2011)(Browning, J.). As the United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d at 412-13 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment. See Holt v. United

States, 46 F.3d at 1003 (citing <u>Wheeler v. Hurdman</u>, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  <u>See</u> <u>Franklin Sav. Corp. v. United States</u>, 180 F.3d 1124, 1129 (10th Cir. 1999); <u>Tippet v. United States</u>, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  <u>Davis ex rel. Davis v. United States</u>, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting <u>Sizova v. Nat'l Inst. of Standards & Tech.</u>, 282 F.3d 1320, 1324 (10th Cir. 2002)).

## **LAW REGARDING SOVEREIGN IMMUNITY AND THE FTCA**

"The United States cannot be sued without its consent."  <u>Garcia v. United States</u>, 709 F. Supp. 2d 1133, 1137 (D.N.M. 2010)(Browning, J.).  "Congressional consent -- a waiver of the traditional principle of sovereign immunity -- is a prerequisite for federal-court jurisdiction." <u>Garcia v. United States</u>, 709 F. Supp. 2d at 1137-38.  "The plaintiff bears the burden of proving that Congress has waived sovereign immunity for all of his claims."  <u>Garcia v. United States</u>, 709 F. Supp. 2d at 1138.   <u>Accord</u> <u>Bork v. Carroll</u>, 449 F. App'x 719, 721 (10th Cir. 2011)(unpublished)[2]("So it is that a plaintiff seeking to invoke the jurisdiction of the federal

---

[2] <u>Bork v. Carroll</u> is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

courts bears the burden of identifying an applicable statutory waiver of sovereign immunity when challenged to do so."); <u>Summa v. United States</u>, 936 F.2d 584, 1991 WL 114638, at *3 (10th Cir. 1991)(unpublished table decision)(holding in an FTCA case that the "Plaintiffs bore the burden of proving that the district court had subject matter jurisdiction over their claims" (citing <u>Miller v. United States</u>, 710 F.2d 656, 662 (10th Cir. 1983)).

    1.  **<u>General Principles of Sovereign Immunity</u>.**

   It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983)(citations omitted). <u>Accord</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994); <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976); <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941). As with any jurisdictional issue, the party bringing suit against the United States bears the burden of proving that sovereign immunity has been waived. <u>See</u> <u>James v. United States</u>, 970 F.2d 750, 753 (10th Cir. 1992). A waiver of sovereign immunity cannot be implied and must be unequivocally expressed. <u>See</u> <u>United States v. Nordic Vill., Inc.</u>, 503 U.S. 30, 33-34 (1992); <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980); <u>United States v. Murdock Mach. & Eng'g Co. of Utah</u>, 81 F.3d 922, 930 (10th Cir. 1996).

    2.  **<u>The FTCA</u>.**

   The only statutory authority to sue the United States for common-law torts is under the FTCA. The FTCA waives the United States' sovereign immunity in certain specific tort actions against the United States for money damages. Congress has explicitly provided, however, that

---

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court finds that <u>Bork v. Carroll</u>, <u>Summa v. United States</u>, 936 F.2d 584, 1991 WL 114638 (10th Cir. 1991)(unpublished table decision), and <u>Mecca v. United States</u>, 389 F. App'x 775 (10th Cir. 2010)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

the only proper party in an action under the FTCA is the United States.  See 28 U.S.C. § 2679(a);

Romanach v. United States, 579 F. Supp. 1017, 1018 n.1 (D.P.R. 1984)(holding that no suit under

the FTCA may lie against any agency of the United States eo nomine); Painter v. FBI, 537 F.

Supp. 232, 236 (N.D. Ga. 1982)(holding that "[t]he FBI may not be sued eo nomine").

In enacting the FTCA, Congress defined the terms and conditions under which the United

States may be sued in tort.  28 U.S.C. § 1346(b) provides, in pertinent part:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims
> against the United States, for money damages accruing on and after January 1,
> 1945, for injury or loss of property, or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of the Government while
> acting within the scope of his office or employment, under circumstances where
> the United States, if a private person, would be held liable to the claimant in
> accordance with the law of the place where the act or omission occurred.

A companion section of the FTCA provides that the United States is liable "in the same manner

and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.

"The law of the place where the alleged negligent conduct took place determines the scope of

employment under the FTCA."  Garcia v. United States, No. 08-0295, 2010 WL 2977611, at *18

(D.N.M. June 15, 2010)(Browning, J.)(citing 28 U.S.C. § 1346(b); Richards v. United States, 369

U.S. 1, 9 (1962); Williams v. United States, 350 U.S. 857, 857 (1955); Henderson v. United

States, 429 F.2d 588, 590 (10th Cir. 1970)).

The Tenth Circuit has emphasized that all dismissals for lack of jurisdiction, including

those for a failure to establish a waiver of sovereign immunity under the FTCA, should be

without prejudice.  As the Tenth Circuit has stated, "[a] longstanding line of cases from this

circuit holds that where the district court dismisses an action for lack of jurisdiction . . . the

dismissal must be without prejudice."  Mecca v. United States, 389 F. App'x 775, 780 (10th Cir.

2010)(unpublished)(quoting Brereton v. Bountiful City Corp., 434 F.3d 1213, 1216 (10th Cir.

2006)).   The Tenth Circuit held in <u>Mecca v. United States</u> that the district court improperly dismissed with prejudice the plaintiff's FTCA claims after it concluded that it lacked jurisdiction over those claims.   <u>See</u> 389 F. App'x at 780-81 ("Here, because the district court found itself without jurisdiction over the FTCA claims, dismissal should have been entered without prejudice, even if the court deemed further amendment futile.   We therefore remand with instructions to enter dismissal of these claims without prejudice." (citation omitted)).

>        **3.**        **Scope of Liability Under the FTCA.**

The FTCA waives the United States' sovereign immunity for certain negligence claims, but it does so only if a private person, performing the same act as the United States, would be liable under the governing state law.   <u>See</u> 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . .").   "[T]hese sections ensure that the United States is placed in the same position as a private individual by rendering the United States liable for the tortious conduct of its employees if such conduct is actionable in the state in which the United States' action or inaction occurred."   <u>Cortez v. EEOC</u>, 585 F. Supp. 2d 1273, 1284 (D.N.M. 2007)(Browning, J.).   "The FTCA's waiver of sovereign immunity is limited, however." <u>Cortez v. EEOC</u>, 585 F. Supp. 2d at 1284.   "If the claim does not fall within the FTCA's express provisions, or if it falls within one of its exceptions, the claim is not cognizable under the FTCA, and the court must deny relief."   <u>Cortez v. EEOC</u>, 585 F. Supp. 2d at 1284 (citing <u>Williams v. United States</u>, 50 F.3d 299, 304-05 (4th Cir. 1995)).

>        **a.**        **Liability Under the Same Circumstances Versus Like Circumstances.**

The FTCA provides that  "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual

under like circumstances."  28 U.S.C. § 2674.  "The Supreme Court [of the United States] has rejected a reading of the FTCA that would impose liability on the United States only to the same extent as would be imposed on a private individual under the same circumstances."  Coffey v. U.S., 870 F. Supp. 2d 1202, 1220 (D.N.M. 2012)(Browning, J.)(emphasis added)(internal quotation marks omitted).  See Indian Towing Co. v. United States, 350 U.S. 61, 65 (1955)("The Government reads that statute as if it imposed liability to the same extent as would be imposed on a private individual 'under the same circumstances.'  But the statutory language is 'under like circumstances[]' . . . .")).  The FTCA did not spur "the creation of new causes of action but acceptance of liability under circumstances that would bring private liability into existence." Feres v. United States, 340 U.S. 135, 141 (1950).  It is important for a court to consider the liability of the United States under all the circumstances presented in the case as opposed to selectively considering only a few of the circumstances.  See Feres v. United States, 340 U.S. at 141-42.  As the Supreme Court has illustrated,

> [o]ne obvious shortcoming in these claims is that plaintiffs can point to no liability of a 'private individual' even remotely analogous to that which they are asserting against the United States.  We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving.   Nor is there any liability 'under like circumstances,' for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons of command.  The nearest parallel, even if we were to treat 'private individual' as including a state, would be the relationship between the states and their militia.  But if we indulge plaintiffs the benefit of this comparison, claimants cite us no state, and we know of none, which has permitted members of its militia to maintain tort actions for injuries suffered in the service, and in at least one state the contrary has been held to be the case.  It is true that if we consider relevant only a part of the circumstances and ignore the status of both the wronged and the wrongdoer in these cases we find analogous private liability.  In the usual civilian doctor and patient relationship, there is of course a liability for malpractice.  And a landlord would undoubtedly be held liable if an injury occurred to a tenant as the result of a negligently maintained heating plant.  But the liability assumed by the Government here is that created by 'all the circumstances,' not that which a few of the circumstances might create.  We find no parallel liability before, and

- 12 -

> we think no new one has been created by, this Act.  Its effect is to waive immunity from recognized causes of action and was not to visit the Government with novel and unprecedented liabilities.

Feres v. United States, 340 U.S. at 141-42 (footnotes omitted).

> **b.     Considering the Liability Under State Law of Private Actors Versus Governmental Actors.**

"The United States' liability is coextensive with that of private individuals under the respective States' law, even if comparable government actors would have additional defenses or additional obligations under that State's law."  Coffey v. U.S., 870 F. Supp. 2d at 1220.  See Ewell v. United States, 776 F.2d 246, 248-49 (10th Cir. 1985); Proud v. United States, 723 F.2d 705 (9th Cir. 1984)("But appellants overlook the fact that in enacting the FTCA, Congress -- not the Hawaii Legislature -- determined the tort liability of the United States.  And the FTCA specifically provides that the federal government's tort liability is co-extensive with that of a private individual under state law."); Cox v. United States, 881 F.2d 893, 895 (10th Cir. 1989)(citing Proud v. United States with approval)("This and other courts have applied the same rationale in holding that the United States may invoke the protection of a recreational use statute.").  The Tenth Circuit illustrated some of these same principles in Ewell v. United States:

> The main goal of the FTCA was to waive sovereign immunity so that the federal government could be sued as if it were a private person for ordinary torts.  Congress was primarily concerned with allowing a remedy where none had been allowed.  There is no evidence that Congress was concerned with the prospect that immunities created solely for private persons would shield the United States from suit.  The Supreme Court, in United States v. Muniz, 374 U.S. 150 . . . (1963), considered whether it is appropriate to apply immunities created by state law to the United States when it is sued under the FTCA.  The Court was concerned with state laws that immunized prison officials from suits by prisoners and concluded that it is "improper to limit suits by federal prisoners because of restrictive state rules of immunity."  374 U.S. at 164 . . . .  The immunity under consideration in that case applied to state, county and municipal prison officials.  Noting its decision in Indian Towing Co. v. United States, 350 U.S. at 65, . . . wherein the Court determined that federal liability had to be determined as if it were a private person and not as if it were a municipal corporation, it concluded that state law

immunity applicable to state, county and municipal prison officials would not be applicable to a private person and, therefore, not applicable to the federal government in a suit under the FTCA.

Thus, while immunities afforded state, county and municipal employees are not applicable to the federal government when sued under the FTCA, immunities created by state law which are available to private persons will immunize the federal government because it is liable only as a private individual under like circumstances. It is evident, therefore, that the Utah district court was correct in granting the motion for summary judgment.

776 F.2d at 249.[3]

In a unanimous decision, the Supreme Court reversed "a line of Ninth Circuit precedent permitting courts in certain circumstances to base a waiver" under the FTCA "simply upon a finding that local law would make a 'state or municipal entit[y]' liable." United States v. Olson, 546 U.S. 43, 44 (2005). As the Supreme Court discussed in United States v. Olson, the Ninth Circuit based its decision to find a waiver of liability under the FTCA on two principles:

In this case, two injured mine workers (and a spouse) have sued the United States claiming that the negligence of federal mine inspectors helped bring about a serious accident at an Arizona mine. The Federal District Court dismissed the lawsuit in part upon the ground that their allegations were insufficient to show that Arizona law would impose liability upon a private person in similar circumstances. The Ninth Circuit, in a brief per curiam opinion, reversed this determination. It reasoned from two premises. First, where "'unique governmental functions'" are at issue, the Act waives sovereign immunity if "'a state or municipal entity would be [subject to liability] under the law [. . .] where the activity occurred.'" Second, federal mine inspections being regulatory in nature are such "'unique governmental functions,'" since "there is no private-sector analogue for mine inspections." The Circuit then held that Arizona law would make "state and municipal entities" liable in the circumstances alleged; hence the FTCA waives the United States' sovereign immunity.

---

[3] Some courts have taken into account special expertise that government officials might have in particular areas when evaluating liability under the FTCA. See Allen v. United States, 588 F. Supp. 247, 354-56 (D. Utah 1984)("As far as nuclear fallout is concerned, the Government possessed an overwhelming superiority in knowledge, as well as an effective monopoly of the special skills, training and experience relevant to open-air atomic testing."), rev'd on other grounds, 816 F.2d 1417 (10th Cir. 1987). But see Gowdy v. United States, 412 F.2d 525, 534 (6th Cir. 1969)("The mere fact that the Government may have had superior knowledge of safety standards did not increase its duty to exercise ordinary care.").

546 U.S. at 45 (alterations in original)(citations omitted).  The Supreme Court "disagree[d] with

both of the Ninth Circuit's legal premises."  546 U.S. at 45.  Regarding the first premise, the

Supreme Court held:

> The first premise is too broad, for it reads into the Act something that is
> not there. The Act says that it waives sovereign immunity "under circumstances
> where the United States, if a private person," not "the United States, if a state or
> municipal entity," would be liable.  Our cases have consistently adhered to this
> "private person" standard.  In Indian Towing Co. v. United States, this Court
> rejected the Government's contention that there was "no liability for negligent
> performance of 'uniquely governmental functions.'"  It held that the Act requires
> a court to look to the state-law liability of private entities, not to that of public
> entities, when assessing the Government's liability under the FTCA "in the
> performance of activities which private persons do not perform."  In Rayonier Inc.
> v. United States, the Court rejected a claim that the scope of FTCA liability for
> "'uniquely governmental'" functions depends on whether state law "imposes
> liability on municipal or other local governments for the negligence of their
> agents acting in" similar circumstances.  And even though both these cases
> involved Government efforts to escape liability by pointing to the absence of
> municipal entity liability, we are unaware of any reason for treating differently a
> plaintiff's effort to base liability solely upon the fact that a State would impose
> liability upon a municipal (or other state governmental) entity.  Indeed, we have
> found nothing in the Act's context, history, or objectives or in the opinions of this
> Court suggesting a waiver of sovereign immunity solely upon that basis.

546 U.S. at 45-46 (emphasis in original)(citations omitted).  The Supreme Court rejected the

Ninth Circuit's second premise based on the following rationale:

> The Ninth Circuit's second premise rests upon a reading of the Act that is
> too narrow.  The Act makes the United States liable "in the same manner and to
> the same extent as a private individual under like circumstances."  As this Court
> said in Indian Towing, the words "'like circumstances'" do not restrict a court's
> inquiry to the same circumstances, but require it to look further afield.  The Court
> there considered a claim that the Coast Guard, responsible for operating a
> lighthouse, had failed "to check" the light's "battery and sun relay system," had
> failed "to make a proper examination" of outside "connections," had "fail[ed] to
> check the light" on a regular basis, and had failed to "repair the light or give
> warning that the light was not operating."  These allegations, the Court held, were
> analogous to allegations of negligence by a private person "who undertakes to
> warn the public of danger and thereby induces reliance."  It is "hornbook tort
> law," the Court added, that such a person "must perform his 'good Samaritan' task
> in a careful manner."

546 U.S. at 46 (alterations in original).

The Court has not located any Tenth Circuit decisions that have discussed the relevant principles that the Supreme Court enunciated in United States v. Olson.  The United States Court of Appeals for the Third Circuit has since held, relying on United States v. Olson, that, "[u]nder the FTCA, the federal government can only be held liable for breaches of duties imposed on private, rather than state, parties."  DeJesus v. U.S. Dep't of Veterans Affairs, 479 F.3d 271, 283 n.9 (3d Cir. 2007).  The Fifth Circuit has held, also relying on United States v. Olson: "Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy.  Inherent differences between the government and a private person cannot be allowed to disrupt this analysis."  In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Miss. Plaintiffs), 668 F.3d 281, 288 (5th Cir. 2012)(citations omitted).

According to one commentator, courts have generally had little difficulty in finding a comparable factual analogy in the private sector for conduct in which the United States engages: "Although, as indicated above, courts have generally had little difficulty in finding sufficiently analogous private conduct, there have been exceptions, primarily in cases involving 'quasi-legislative' actions, such as administrative rulemaking, and in cases involving law enforcement officials, who, unlike private citizens, are required to make arrests in appropriate situations."  2 L. Jayson & R. Longstreth, Handling Federal Tort Claims § 9.08[1], at 9-219 (2011).  The Tenth Circuit has stated: "It is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs."  United States v. Agronics Inc., 164 F.3d 1343, 1345 (10th Cir. 1999)(internal quotation marks omitted).  It recognized that "[o]ther courts invoke the same rule

by the shorthand expressions of immune 'quasi-legislative' or 'quasi-judicial' action."   <u>United</u>

<u>States v. Agronics Inc.</u>, 164 F.3d at 1345.

> Thus, for example, courts have rejected FTCA claims premised upon such administrative/regulatory acts or omissions as (1) the FAA's failure to take enforcement action against an entity not complying with federal laws and rules; (2) the USDA's failure to prohibit the exportation of disease-exposed cattle; and (3) various agencies' noncompliance with proper rulemaking procedures.

<u>United States v. Agronics Inc.</u>, 164 F.3d at 1346 (citations omitted)(finding no FTCA waiver for

"the unauthorized division of regulatory jurisdiction between two administrative agencies").

### 4.      <u>Conflicts of Law Under the FTCA.</u>

The FTCA addresses conflicts of law in 28 U.S.C. § 1346(b)(1).   <u>See</u> 28 U.S.C.

§ 1346(b)(1).  Specifically, this subsection states that courts determine liability under the FTCA

"in accordance with the law of the place where the act or omission occurred."   28 U.S.C.

§ 1346(b)(1).   The Supreme Court has recognized in <u>Richards v. United States</u>, 369 U.S. 1

(1962), that this provision operates as follows in FTCA actions involving conduct in multiple

States:

> In the Tort Claims Act Congress has expressly stated that the Government's liability is to be determined by the application of a particular law, the law of the place where the act or omission occurred, and we must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used.  We believe that it would be difficult to conceive of any more precise language Congress could have used to command application of the law of the place where the negligence occurred than the words it did employ in the Tort Claims Act.  Thus we first reject the alternative urged by American Airlines.   The legislative materials cited to us by American not only lack probative force in a judicial sense, but they are completely unpersuasive to support the argument that Congress intended the words "act or omission" to refer to the place where the negligence had its operative effect.  The ease of application inherent in the rule urged by American lends a certain attractiveness, but we are bound to operate within the framework of the words chosen by Congress and not to question the wisdom of the latter in the process of construction.  We conclude that Congress has, in the Tort Claims Act, enacted a rule which requires federal courts, in multistate tort actions, to look in the first instance to the law of the place where the acts of negligence took place.

369 U.S. at 9-10 (footnotes omitted).  The Tenth Circuit has further explained how this rule in

Richards v. United States operates:

> It is of course true, as a generality, that a mere act of negligence is not legally
> tortious and becomes an actionable wrong, a tort, only when harm results to the
> claimant.  Damage is the last event necessary to impose liability and the place of
> the occurrence of damage may become important when the doctrine of conflicts
> of laws must be applied.  The state in which damage occurs is said to be the
> "place of wrong," Restatement, Conflicts of Laws, § 377, and under the first
> Restatement § 378, it is the law of the place of wrong which governs.  A less
> mechanistic approach has been adopted by the Restatement (Second) § 379 (Tent.
> Draft No. 9, 1964), and the Supreme Court in Richards v. United States, 369 U.S.
> 1 . . . , making reference to the latter approach, has expressly held that the "place
> of wrong" doctrine does not apply to cases arising under the Federal Tort Claims
> Act.  Thus in Richards, it was held that the amount of damages recoverable under
> the Act was controlled by the whole law of the State of Oklahoma, the place of
> negligence rather than the place of wrong, which state, in turn, recognized the law
> of Missouri, the place of damage, as determinative of that element of the tort. . . .
>
> Although an act of negligence . . . is not actionable without damage it is
> apparent that after damage occurs the initial premise of the tort is the act of
> negligence.  The liability of the United States for the completed tort shall be "in
> accordance with the law of the place where the act or omission (negligence)
> occurred."  28 U.S.C. § 1346(b).  These statutory words "command application of
> the law of the place where the negligence occurred" and dispose of any conflict of
> law question in the first instance.  Richards v. United States, supra, 369 U.S. at p.
> 9 . . . .  Appellant's claim is thus dependent upon the law of Taiwan, a foreign
> country . . . .

Manemann v. United States, 381 F.2d 704, 705 (10th Cir. 1967).  Once a court has determined

the State that governs the law of the place where the act or omission occurred, the court then

applies "the whole law of the place where the negligence occurred," including that State's

choice-of-law rules:

> Recently there has been a tendency on the part of some States to depart from the
> general conflicts rule in order to take into account the interests of the State having
> significant contact with the parties to the litigation.  We can see no compelling
> reason to saddle the Act with an interpretation that would prevent the federal
> courts from implementing this policy in choice-of-law rules where the State in
> which the negligence occurred has adopted it.

Richards v. United States, 369 U.S. at 10-13 (footnote omitted)); id. at 14 ("Certainly there is nothing in the legislative history that even remotely supports the argument that Congress did not intend state conflict rules to apply to multistate tort actions brought against the Government."). As the Tenth Circuit has stated: "The 'whole law' of the state includes that state's rules regarding choice of law."  Bodrug v. United States, 832 F.2d 136, 137 (10th Cir. 1987), abrogated on other grounds as stated in Mountain Fuel Supply v. Reliance Ins. Co., 933 F.2d 882 (10th Cir. 1991).

**5.      Statute of Limitations for FTCA Claims.**

28 U.S.C. § 2401(b) provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).  Although the statute is not a model of clarity, the Courts of Appeals have uniformly interpreted the statute to bar a tort claim against the United States "unless it is presented to the proper agency within two years of its accrual and suit is commenced within six months of notice of the claim's denial by the agency."  Indus. Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d at 968.  See also Houston v. United States Postal Serv., 823 F.2d 896 (5th Cir. 1987)("Though phrased in the disjunctive, this statute requires a claimant to file an administrative claim within two years and file suit within six months of its denial.")(emphasis in original).

## ANALYSIS

The Court concludes that 28 U.S.C. § 2401(b) bars Ponce's claim.  Although the statute is confusing, the Tenth Circuit shares the unanimous view of its sister circuits that a plaintiff must satisfy both of the statute's requirements.  The Court will, therefore, dismiss the case for lack of

subject-matter jurisdiction.

The United States correctly identified the relevant sequence of events: "Plaintiff presented his claim to the agency in a timely manner, but failed to request the agency to reconsider its decision or file an action in this Court within 6 months of the agency's denial of his claim." Motion at 3-4. Ponce, therefore, failed to comply with 28 U.S.C. § 2401(b). The Court, thus, lacks subject-matter jurisdiction over this matter.

This view of the statute is unintuitive to the untutored. At first blush, the statute appears to set out its requirements in the disjunctive:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b) (emphasis added).

There are two principal explanations for the contrary position. One line of cases, of which Willis v. United States, 719 F.2d 608 (2d Cir. 1983)(Friendly, J.), is a leading example, examines the section's legislative history at length and concludes:

> The legislators . . . knew exactly what they were doing . . . . Why the draftsman chose to use "or" in the bill, as distinguished from the crystal clear "and" of the committee reports, is indeed beyond our ken. It suffices to overcome plaintiffs' attempt to have us rewrite the statute that the committees had the "or" language of the bills before them and thought it meant "and".

719 F.2d at 612. A second line of cases instead parses the text and its context:

> Claimants, remember, must present their claims to the relevant agency before bringing suit in federal court. See 28 U.S.C. § 2675(a). And if we construe the Act's time bar to mean that the claimant must fail to satisfy both deadlines, that would pull at least two threads out of a coherent reading of the provisions. For one, a claimant cannot receive a notice of denial -- the trigger for the six-month limitations rule -- until she has filed an administrative claim. The statute thus plainly contemplates that one act (the administrative filing) will precede the other (court filing) and thus most naturally requires claimants to satisfy both deadlines.

For another, the alternative would effectively eliminate <u>any</u> court deadline. It would mean that (1) claimants could wait as long as they wished before presenting tort claims to agencies as long as they filed the claim within six months of any denial or (2) they could present their claims to agencies within two years of accrual and then wait as long as they wished to file suit in district court.  But no one doubts that Congress meant to impose <u>some</u> time limitation on administrative and court filings, and, if we left the Act without a meaningful time limitation, we would be "tak[ing] it upon ourselves to extend the waiver [of sovereign immunity] beyond that which Congress intended." <u>United States v. Kubrick</u>, 444 U.S. 111, 117-18 . . . (1979).

\* \* \* \*

 [The claimant's] principal response is to say that § 2401 is disjunctive," Br. at 17, "allow[ing] a claimant to proceed . . . by <u>either</u> presenting the claim to an agency within two years of accrual <u>or</u> by filing a legal action with[in] six months of a final denial," Br. at 9.  No doubt that is one way to read the provision, and we credit [the claimant's] effort to focus on the text at hand.  But the fact that the statute uses the disjunctive does not by itself tell us anything.  The question remains whether the statute sets forth alternative ways of barring a claim or alternative ways of preserving a claim.  A statute that precludes an action if the claimant (disjunctively) fails to meet either of two requirements generally will come to the same end as a statute that requires the claimant (conjunctively) to fulfill both requirements.  In barring an action if the claimant fails to meet the agency-filing deadline (because it is not "presented in writing to the appropriate Federal agency within two years after such claim accrues") "or" if the claimant fails to meet the court-filing deadline (because it is not "begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented"), the statute bars claims that fail to meet either deadline.  And because [the claimant] failed to meet the second deadline, that dooms the action.

Nor, for similar reasons, is [the claimant] correct that this reading of the statute transforms "or" into "and."  While we will not pretend that the statute is a model of draftsmanship, the use of "or" together with the statutory imperative that actions be filed in a specific order signals that there are two different ways to file a claim late-by waiting more than two years to file a claim with the agency or, having filed that claim, waiting more than six months to file a claim with the court -- not two conjunctive requirements for filing a claim late.  Had Congress used "and" in writing this statute (or had we adopted "and" in construing it), that would mean that a claim would be barred only if the plaintiff filed the action late in the agency <u>and</u> filed the action late in court.  That is not a traditional way to formulate a limitations rule.

<u>Ellison v. United States</u>, 531 F.3d 359, 361-363 (6th Cir. 2008)(Sutton, J.)(emphasis in original).

Ponce is correct that the Tenth Circuit has not adopted either line of reasoning. It has, however, expressly stated -- albeit without elaboration -- that 28 U.S.C. § 2401(b) bars a tort claim against the United States "unless it is presented to the proper agency within two years of its accrual <u>and</u> suit is commenced within six months of notice of the claim's denial by the agency." <u>Indus. Constructors Corp. v. U.S. Bureau of Reclamation</u>, 15 F.3d at 968 (emphasis added). <u>See</u> <u>Franklin Sav. Corp. v. United States (In re: Franklin Sav. Corp.)</u>, 385 F.3d at 1287 ("Federal law bars any tort claim against the United States unless it is presented to the appropriate federal agency within two years of the claim's accrual, <u>and</u> filed within six months after notice of denial of the claim by that agency." (emphasis added)). That conclusion -- made twice -- binds the Court.

Ponce is not the first plaintiff to fall prey to the statute's peculiar construction. As the Honorable Henry J. Friendly, Circuit Judge for the United States Court of Appeals for the Second Circuit, recognized three decades ago:

> The existing language may cause hardship to litigants acting *pro se* or represented by inexpert counsel, although this risk is diminished by the warning required to be contained in the notices of denial . . . . Granted that Congress has decidedly more serious concerns, there must be time over 15 years for the Department of Justice to secure passage of a bill that would substitute "and" for "or" when the former so much more clearly says what Congress meant and the proposal thus is truly noncontroversial.

719 F.2d at 613 n.3. The problem has not improved with age. Nonetheless, Tenth Circuit precedent squarely provides that plaintiffs must satisfy both of Section 2401(b)'s prongs. The Court will, therefore, dismiss the case.

**IT IS ORDERED** that the United States of America's Motion to Dismiss, filed July 8, 2013 (Doc. 9), is granted, and the case is dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Mark Anthony Acuna
Davis Law Firm
San Antonio, Texas

       *Attorneys for the Plaintiff*

Kenneth J. Gonzales
  United States Attorney
Ruth Fuess Keegan
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Defendant*